## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WATER GAP ACQUISITION PARTNERS, | : | |
| LLC | : | |
| 288 Mountain Road | : | |
| Delaware Water Gap, PA 18327 | : | CIVIL ACTION |
| and | : | JURY DEMAND |
| WATER GAP CAPITAL PARTNERS, LLC | : | |
| 288 Mountain Road | : | |
| Delaware Water Gap, PA 18327, | : | |
| Plaintiffs | : | |
| v. | : | No. _____ |
| SMITHFIELD TOWNSHIP | : | |
| 1155 Red Fox Road | : | |
| East Stroudsburg PA 18301 | : | |
| and | : | |
| SMITHFIELD TOWNSHIP BOARD OF | : | |
| SUPERVISORS | : | |
| 1155 Red Fox Road | : | |
| East Stroudsburg PA 18301 | : | |
| and | : | |
| ROBERT LOVENHEIM | : | |
| 1155 Red Fox Road | : | |
| East Stroudsburg PA 18301 | : | |
| and | : | |
| BRIAN E. BARRETT | : | |
| 1155 Red Fox Road | : | |
| East Stroudsburg PA 18301 | : | |
| and | : | |
| BOROUGH OF DELAWARE WATER GAP | : | |
| 49 Main Street | : | |
| Delaware Water Gap PA 18327 | : | |
| and | : | |
| JOHN W. SHOEMAKER | : | |
| 49 Main Street | : | |
| Delaware Water Gap PA 18327 | : | |
| and | : | |
| WILLIAM BUZZARD | : | |
| 49 Main Street | : | |
| Delaware Water Gap PA 18327, | : | |
| Defendants | : | |

7099062v4

## COMPLAINT AND JURY DEMAND

Plaintiffs, Water Gap Acquisition Partners, LLC and Water Gap Capital Partners, LLC, d/b/a/ Water Gap Wellness, bring this Complaint seeking damages for violation of constitutional and statutory rights against Defendants Smithfield Township, Smithfield Township Board of Supervisors, Brian E. Barrett, Robert Lovenheim (collectively **"Township Defendants"**), Borough of Delaware Water Gap, Jack Shoemaker and William Buzzard (collectively **"Borough Defendants"**).  Plaintiffs assert claims against Defendants under the United States Constitution, 42 U.S.C. §1893, the Fair Housing Act, 42 U.S.C. §§3601 *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §§121010 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §793.

## I.  INTRODUCTION

1.  Since 2018, Plaintiff Water Gap Wellness has diligently striven to obtain approval to provide inpatient residential treatment to persons, who are disabled by alcohol and/or drug addiction, at a 40-acre property, which is improved with a hotel and golf course and located in a low-density residential district in Smithfield Township.  Because Water Gap Wellness' plan is to provide treatment to persons afflicted with alcohol and/or drug addiction at the property, the Township has required the Plaintiff to make numerous applications to try to secure the necessary approvals.  First, Water Gap Wellness was compelled to obtain a determination that the Zoning Ordinance did not allow the use anywhere in the Township.  Next, Water Gap Wellness was compelled to obtain a curative amendment to allow the use in this residential district, but on condition that it also obtain a conditional use permit.  After ultimately passing these first two hurdles, when Water Gap Wellness took the third and final step of applying for the conditional use permit, the Township pulled the rug from under its feet, denying the application.  In denying the permit, the Township Supervisors Barrett and Lovenheim were influenced by the opposition mounted by Defendants, the Borough of Delaware Water Gap, the Borough officials and various

2

non-party co-conspirators, targeted specifically against persons in need of treatment for substance addiction and mental illness. Defendants denounced persons in need of treatment, claiming that they were dangerous and undesirable, and not wanted in their community. Defendants conspired to prevent, interfere with and delay Plaintiffs from being able to provide much needed residential inpatient treatment to persons with addictive or mental health illness at the Property, notwithstanding that the Property contains well over forty acres and is well buffered from residential neighborhoods. Plaintiffs seek damages against Defendants due to their concerted exclusionary, discriminatory and wrongful actions in violation of the constitutional and statutory rights of Plaintiffs and the disabled persons they seek to serve.

## II.   JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction because this action arises under the laws and Constitution of the United States, pursuant to 28 U.S.C. §1331, and under the Federal Civil Rights Acts, pursuant to 28 U.S.C. §1343.

3.     Venue is proper in the Middle District of Pennsylvania because the claims arose within the district and the parties, witnesses and evidence are located in this venue.

## III.   PARTIES

4.     Plaintiff Water Gap Acquisitions Partners, LLC (**"Water Gap Acquisitions"**) is a Pennsylvania limited liability company, which owns the property containing a total of 130 acres, with a street address of 288 Mountain Road, Delaware Water Gap, Monroe County, PA 18327.

5.     Plaintiff Water Gap Capital Partners, LLC is: (a) a Pennsylvania limited liability company, with a principal place of business located at 288 Mountain Road, Delaware Water Gap, Monroe County, PA 18327, (b) leases the property owned by Water Gap Acquisitions and (c) does business as Water Gap Wellness (**"Water Gap Wellness"**).

7099062v4

6.     Water Gap Wellness seeks to provide residential inpatient treatment to persons suffering from addiction to alcohol and/or controlled substances at the property and brings this action on its own behalf and on behalf of its prospective clients.

7.     Defendant Smithfield Township (**"Township"**) is a Pennsylvania municipal corporation organized under the Second-Class Township Code, with a principal office located at 1155 Red Fox Road, East Stroudsburg, PA 18301.

8.     Defendant Smithfield Township Board of Supervisors (**"Supervisors"**) is the governing body of the Township, with a principal office located at 1155 Red Fox Road, East Stroudsburg PA 18301.

9.     This action is brought against Defendant Brian E. Barrett both individually and in his official capacity as Supervisor of the Township Board of Supervisors.

10.    This action is brought against Defendant Robert Lovenheim both individually and in his official capacity as Supervisor of the Township Board of Supervisors.

11.    Defendant Borough of Delaware Water Gap (**"Borough"**) is a Pennsylvania borough with approximately three miles of road and a 2018 estimated population of 747, with a principal office located at 49 Main Street, Delaware Water Gap PA 18327.

12.    This action is brought against Defendant William Buzzard (**"Buzzard"**) both individually and in his capacity as Vice President of the Borough.

13.    This action is brought against Defendant John W. Shoemaker (**"Shoemaker"**) both individually and in his capacity as President of the Borough.

## IV.   FACTUAL BACKGROUND

### A.    The Opioid Crisis

14.    The prescription opioid and heroin overdose epidemic is the worst public health crisis in Pennsylvania, according to the Pennsylvania Department of Health.

7099062v4

15.     On August 2, 2021, Governor Wolf issued a letter to the Pennsylvania General Assembly, requesting that it extend the Opioid Disaster Declaration issued in January 2018 and stating, among other things, that (a) the COVID pandemic resulted in "a heartbreaking increase in opioid overdoses nationwide," and (b) Pennsylvania's opioid overdose rate increased 16% in 2020.

16.     In Monroe County, the annual estimate of individuals suffering from drug use disorder rose steadily from approximately 1,682 in 2016; 2,121 in 2017; 2,403 in 2018 and 3,034 in 2019.  (The estimate for 2020 was not available.)

17.     The number of estimated deaths that resulted from drug overdoses in Monroe County also increased on average from approximately 42 in 2016; 57 in 2017; 54 in 2018; 58 in 2019 and 79 in 2020.

18.     Numerous studies have found that addiction to heroin and other opiates is a chronic medical illness that produces significant and lasting changes in brain chemistry and function. Numerous studies have also found that this medical illness can be effectively treated through counselling and rehabilitation services.

19.     Federal law prohibits public persons, such as the Township, the Borough, public officials and co-conspirators, from excluding persons with disabilities or discriminating against them in providing housing, programs, benefits or activities.  These protections extend to persons participating in alcohol and drug rehabilitation programs, such as the program Water Gap Wellness has diligently striven to provide.  This action challenges Defendants' acts of discrimination and seeks damages.

### B.     The Property and Proposed Treatment Center

20.     Water Gap Acquisitions' 130-acre property consists of six parcels, three of which are located in Smithfield Township and three in Delaware Water Gap Borough.

7099062v4

21.     The former Water Gap Hotel & Country Club operated a hotel and golf course on approximately 40 acres of the property now owned by Water Gap Acquisitions and located in Smithfield Township (**"Property"**).

22.     The hotel and golf course operated legally in the R-1 (Low Density) residential zoning district in Smithfield Township.

23.     Water Gap Wellness has diligently striven to apply for approval to provide long-term residential inpatient treatment at the Property to persons suffering from alcohol and/or drug addiction.

24.     An aerial view of the entire property is shown below:



25.     As is evident from the above aerial, the hotel is separated from any residential areas by expansive natural buffers, including the Appalachian Trail to the south.

C.    **Water Gap Wellness' First Application**

26.    Water Gap Wellness cannot secure a license from the Pennsylvania Department of Drug and Alcohol Programs to operate the planned residential inpatient treatment center at the Property unless and until it secures a permit from the Township allowing the use.

27.    Because in 2018, the Township Zoning Ordinance did not allow for operation of a residential inpatient treatment center for addiction recovery anywhere in the Township, on December 3, 2018, Water Gap Wellness applied to the Township Zoning Officer for a determination that it could operate a residential inpatient treatment center at the Property under the Township Zoning Ordinance.

28.    After the Township Zoning Officer agreed that operation of a residential inpatient treatment facility was not provided for under the Zoning Ordinance, he referred Water Gap Wellness' application to the Board of Supervisors.

29.    The Board of Supervisors held a total of six hearings on Water Gap Wellness' 2018 application for a zoning determination that it could operate a residential inpatient treatment center at the Property.  The hearings occurred on March 20, 2019, April 3, 2019, May 8, 2019, June 12, 2019, July 17, 2019 and August 28, 2019.

30.    At the April 3, 2019 hearing, Joseph Schlim (**"Schlim"**), a member of Water Gap Capital Partners LLC, testified that: (a) the treatment provider, Water Gap Wellness intended to provide inpatient detoxification and clinical services, all under the oversight of a medical director and (b) the facility would be staffed full-time and include 24-hour video security.

31.    The prospective clients of the detoxification and residential inpatient treatment will be disabled, as: (a) they will be diagnosed as suffering from alcohol or drug dependence; (b) their addiction will substantially limit their ability to live independently and with their families and/or

7

(c) their impairment is usually long-term as they are unable to abstain from alcohol or drug abuse without continued care.

32.     At the July 17, 2019 hearing, Defendant Shoemaker, the president of the Borough of Delaware Water Gap, made statements targeted against individuals who seek treatment for substance abuse, including stating the following: (a) persons could leave the center after detoxification and land on his property anytime of the day or night; (b) a wellness center is intended for persons interested in losing weight "not because you're addicted to heroin or Fentanyl or some other opium drug"; (c) locating a drug and alcohol rehab center will cause property values to decline; (d) "do you want to be known as a drug and rehab center or capital or do you want to be known as a gateway to the Poconos where you can offer trails, Appalachian Trail, a jazz mecca …."; (e) "Why should anybody on that street be exposed to that type of potential threat and live in fear because you don't know what's going to come down the street?" and (f) "once that facility is there and people realize that you have people up there that may be addicted to heroin and Fentanyl and all the other things and come and go as they wish, that's a threat.  People live in fear based on that."

33.     Although the Board of Supervisors approved Water Gap Wellness' zoning determination application on August 28, 2019, the Board conditioned the approval on Water Gap Wellness submitting a conditional use permit to satisfy the neighbors' concerns, including Defendant Shoemaker.

34.     The Board required Water Gap Wellness to submit a conditional use application, notwithstanding that in the October 16, 2019 written decision, the Board of Supervisors recognized that the neighbors' objections were exclusionary and discriminatory:

7099062v4

> The impact upon the community and neighborhood where the use is proposed does not rise to the level to support a finding against placing the use in the R-1 Zoning District.
>
> The attempts by the neighbors to object to the use are an attempt at best to be unnecessarily exclusionary and at worst discriminatory to those with disabling illnesses and addictions especially since individuals with disabling illnesses and addictions can reside in any of the permitted or conditional uses allowed in the R-1 Zoning District.

*See* nos. 25 and 26 of Board's 10/16/19 Decision, attached as **Exhibit A**.

35.     Notwithstanding the Board's recognition of the residents' exclusionary and discriminatory remarks, however, the Board nonetheless allayed the residents' concerns by pointing out that they would still be addressed in the context of the conditional use application. 10/16/19 Board Decision no. 19.

### D.     Defendants' Appeal

36.     Defendants Buzzard and Shoemaker, among others, (a) appealed the Board's October 16, 2019 Decision to the Monroe County Court of Common Pleas and (b) obtained a stay of any conditional use proceeding while their appeal was pending.

37.     In addition, on November 16, 2019, the Planning Commission recommended that any conditional use permit be rejected and alternatively, insisted that numerous onerous conditions be imposed on operating any treatment facility for inpatient alcohol and drug abuse disorders at the Property.

38.     By March 2020, Water Gap Wellness had performed extensive renovations at the Property, including upgrading the septic system, installing sprinklers and bringing the buildings up to code.

7099062v4

39.     In March 2020, Water Gap Wellness opened the inn to private guests, including persons obtaining outpatient treatment for substance abuse disorders and other mental health illnesses.

40.     PA Nice Homes LLC, a Pennsylvania limited liability company, operates a fully licensed outpatient treatment center, located at 100 Plaza Court, East Stroudsburg, Pennsylvania.

41.     Persons obtaining outpatient treatment are legally permitted to stay at the inn.

42.     By June 10, 2020 Order, the Court of Common Pleas held that: (a) the Township Zoning Ordinance did not allow the use of treatment for substance abuse but that (b) the Board of Supervisors did not have jurisdiction to determine that such a use could occur in a residential district without formally amending the Zoning Ordinance.  A copy of the 6/10/20 Opinion and Order is attached as **Exhibit B**.

### E.     Water Gap Wellness' Second Application (Curative Amendment)

43.     Two days after the Trial Court's June 10, 2020 decision, on June 12, 2020, Water Gap Wellness applied to the Township Board of Supervisors for a curative amendment to the Zoning Ordinance, to allow it to provide inpatient treatment for persons disabled with substance abuse disorders in the R-1 residential district where the Property is located.

44.     In response to Defendants' earlier opposition to Water Gap Wellness' initial application, on July 28, 2020, the Township enacted an amendment to the Zoning Ordinance that restricted the operation of rehabilitation facilities, such as Plaintiff's proposed residential inpatient center, to solely commercial zones, which the Township re-named "Economic Development Zoning District."  Specifically, the amended Ordinance No. 237 defines "rehabilitation facility" as "a licensed establishment, with 24-hour supervision whose primary purpose is the rehabilitation of persons.  Such services include drug and alcohol rehabilitation, physical therapy, occupational

therapy, speech pathology services, assistance or emotionally and mentally disturbed persons, and halfway houses for prison parolees and juveniles."

45.     Water Gap Wellness' curative amendment, however, was submitted prior to the Township's publication of the new Economic Development Zoning.

46.     At the first, August 11, 2020 Board hearing on the application for the curative amendment, the Board adopted the record from the prior proceeding which included *inter alia* Shoemaker's discriminatory remarks quoted above.

47.     Defendants Shoemaker and Buzzard nonetheless insisted that the Board hold additional hearings so that they could introduce "evidence" regarding the inn's current operations; although, such information was not relevant to the issue before the Board of whether to enact the curative amendment.  *See, e.g., Heck v. Zoning Hearing Bd. for Harvey's Lake Borough,* 397 A.2d 15, 18 (Pa. Commw. Ct. 1979) (evidence that property owner may possibly intend to put property to use that is contrary to zoning law is not reason to prohibit otherwise lawful use on such property).

48.     Defendant Lovenheim, however, approved Shoemaker's and Buzzard's offer to introduce this extraneous information, over Water Gap Wellness' objection, stating "we're talking about whether this inn is an inn or whether this inn is a treatment center."  Again, how the inn was operated while awaiting the long-delayed permit approval was irrelevant to the issue before the Board of whether to grant the curative amendment to allow inpatient treatment centers in a residential district.

49.     At the August 11, 2020 hearing on the curative amendment, Schlim again explained that once the Property was approved to provide inpatient substance abuse treatment, that (a) the

11

persons would receive intensive treatment exclusively on site and (b) they would be supervised full-time both while on or off the Property.

50.     At the August 11, 2020 hearing, Defendant Shoemaker told the Board that he had followed the vans transporting guests from the inn and tracked them down to outpatient treatment providers as though that were relevant to the application for a curative amendment.

51.     The Board, however, responded to Defendant Shoemaker's information by hiring a private detective to investigate the hotel's current operations; although, the Board acknowledged, through its Solicitor, at the September 9, 2020 hearing that any such investigation was not relevant to the issue before the Board of whether the curative amendment should be enacted.

52.     Thereafter, counsel for the parties were permitted to view the surveillance videotape, which the Board had obtained from its investigator, and confirmed that Water Gap Wellness was legally operating an inn and not in any way violating the Zoning Ordinance.

53.     In fact, during all of the time that Shoemaker, Buzzard and Anders repeatedly told Defendants Lovenheim and Barrett that Water Gap Wellness was operating the hotel illegally, the Township never brought an enforcement action against Water Gap Wellness.

54.     Defendant Shoemaker was outraged when two of the Supervisors moved to approve the curative amendment, albeit with lengthy onerous conditions, when the planning commission had voted unanimously to recommend that the amendment be rejected.  Defendant Shoemaker denounced the motion to approve the use as a "travesty" and threatened the Board that they would be exposed to liability "if any of these people out of this facility injure or hurt anybody in that surrounding area."

7099062v4

55.     Anders told the Board, "As each of you know as you're sitting there none of you would want this facility next to your home, but it's okay to put it in somebody – next to somebody else's home because it's in a part of the township that is divorced from the main part of it."

56.     On September 9, 2020, the Board voted two to one, with Defendant Barrett dissenting, to enact the curative amendment to the Zoning Ordinance, allowing inpatient treatment of persons afflicted with substance abuse disorders in a residential district on condition that (a) the property be subdivided; (b) all treatment occur on site; (c) treatment be provided to no more than 60 persons at a time and (d) the provider must still apply for a conditional use permit.  A copy of the Board's 9/22/20 written decision is attached as **Exhibit C**.

57.     Specifically, the Township's curative amendment defines the permissible treatment center as "facilities in which a combination of temporary housing, medically supervised subacute care, personal supportive services and counseling for individuals of all ages seeking rehabilitation for drug, alcohol and substance abuse reasons.  Such facilities may include services for individuals requiring temporary skilled nursing services, but will also include services focusing on mental health therapy."  A copy of the curative amendment is attached as **Exhibit D**.

58.     In enacting the curative amendment, the Board of Supervisors made a legislative determination that the Property's use as an alcohol and/or drug treatment facility will not have an adverse impact on the public interest.  *See Sluciak v. Cecil Twp. Bd. of Sup'rs,* 223 A.3d 725, 730 (Pa. Commw. Ct. 2019).

59.     On October 21, 2020, once again, Anders, Buzzard and Shoemaker, among others, appealed the September 22, 2020 Board of Supervisors' Decision to the Monroe County Court of Common Pleas.

7099062v4

60.     By June 10, 2021 Decision, the Court of Common Pleas denied the appeal and affirmed the Board's enactment of the curative amendment.  A copy of the April 30, 2021 Opinion and Order is attached as **Exhibit E**.

61.     Hearing the appeal *de novo,* the Court of Common Pleas held that "a drug and alcohol rehabilitation facility was not a permitted use anywhere in the township.  Water Gap is entitled to site-specific relief on its property."  Decision p. 21.

62.     Regarding the Defendants' evidence that the inn was being used as a treatment center, the Court of Common Pleas observed:

> While it is true that Water Gap is free to have patients from a rehabilitation facility in East Stroudsburg stay as guests at the hotel under the existing R-1 ordinance, Water Gap will not be able to seek a license for rehabilitation services for the hotel itself unless there is a rezoning.

Decision p. 24 (underline added).  Thus, the Court confirmed that Water Gap Wellness was legally permitted to provide housing to guests who obtained outpatient treatment off site.

63.     Once again, Buzzard, Shoemaker and Anders, among others, filed an appeal of the decision affirming the curative amendment which is pending before the Commonwealth Court.

**F.     Water Gap Wellness' Third Application (Conditional Use Permit)**

64.     On or about March 1, 2019, Water Gap Wellness applied for the conditional use permit, as required under the curative amendment, to provide inpatient treatment to persons afflicted with drug and/or alcohol addiction at the Property.

65.     A conditional use application recognizes that the use is permitted and objectors have the burden of establishing to a high degree of probability that grant of the conditional use would substantially affect the health and safety of the community in an adverse manner.  *See Robinson Twp. v. Westinghouse Broadcasting Co.,* 440 A.2d 642, 644 (Pa. 1981) (objectors must produce probative evidence to support fears and concerns they expressed before board).

14

66.     Defendants Shoemaker and Buzzard insisted that the Township Planning Commission, on December 2, 2020, impose a host of onerous conditions on Water Gap Wellness' proposed treatment facility which the Township Planning Commission agreed to do "to avoid [it] becoming just a mental health facility."

67.     Many of the Planning Commission's conditions, which Defendants caused it to recommend, infringed on the Pennsylvania Department of Alcohol and Drug Program's jurisdiction by requiring Water Gap Wellness, among other things, to provide screening, background checks, obtain joint accreditation for addiction treatment and rehabilitation, and restrict a patient from staying longer than 60 days.

68.     At Defendants' urging, the Planning Commission even recommended that the Township require Water Gap Wellness to change its name; although, the Township had no such authority.

69.     Defendants Shoemaker and Buzzard insisted, through their counsel, that:

a.      the facility be secured with a fence "because there's a fear that people are going to leave the facility, wander about the neighborhood.  I mean the neighborhood is immediately adjacent to this.  They're doing detox, they have people that are heroin addicts, you know, oxycodone addicts, whatever, and those people are being loosed into the community when they leave and a fence deters that."

b.      the police be notified when a resident leaves the program because "[w]e're very fearful that there may be a crime based upon the nature of the people that are there and the close proximity of the residences …."

7099062v4

c.    only persons with addictions be admitted to treatment "so that the facility does not become a mental health treatment facility." Quoting 12/2/20 Planning Commission Meeting Minutes p. 3, attached as **Exhibit F**.

70.    Anders told the Planning Commission that it should recommend that if a crime is committed by a person in treatment that the conditional use be revoked.

71.    Although the Planning Commission voted to recommend the conditional use, it imposed numerous onerous conditions over which it had no jurisdiction. *See* Exhibit F.

72.    Immediately following the Planning Commission meeting, on December 2, 2020, the Board held the first hearing on the conditional use application and again adopted the record from the prior two proceedings for purposes of determining the application.

73.    Nonetheless, at the insistence of Anders, Buzzard and Shoemaker and the agreement of Defendants Barrett and Lovenheim, the Board held five more hearings on the conditional use application, which hearings occurred on December 2, 2020, January 20, 2021, January 27, 2021, February 9, 2021 and March 2, 2021.

74.    Once Water Gap Wellness satisfied its burden that the proposed use satisfied the objective requirements of the curative amendment, a presumption arose that the proposed use was consistent with the health, safety and general welfare of the community and the burden shifted to the objectors to rebut that presumption by proving "to a high degree of probability that the proposed use will substantially affect the health, safety and welfare of the community greater than what is normally expected from that type of use and not just speculation of possible harms." *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.,* 739 A.2d 644 (Pa. Commw. Ct. 1999) (citations and internal quotes omitted).

7099062v4

75.     Anders, Buzzard and Shoemaker failed to satisfy this heightened burden, making only inflammatory, speculative and discriminatory assertions about future harm to themselves and never offering any evidence, including *any* expert testimony, to support their speculative, specious and prejudicial statements targeted against the disabled persons who would be housed and treated at the rehabilitation center.

76.     Despite the objectors' complaints about alleged increased traffic if the conditional use application was approved, only Water Gap Wellness called a traffic engineer to testify.

77.     Anders asked Water Gap Wellness' traffic engineer, "does detox occur in a resort hotel?"

78.     The Township Board of Supervisors continued to allow, over Water Gap Wellness' objections, Anders, Buzzard, Shoemaker and others to make complaints that the hotel was currently housing guests who obtain outpatient treatment elsewhere, notwithstanding that such evidence was not relevant to the conditional use application.

79.     For instance, because guests staying at the inn, who receive outpatient treatment off site, must keep medications at the hotel, Anders told the Board, "[i]t shows that they have drugs for use at a facility in a residential zone that you people put there knowing it was residential and that endangers the welfare of the residents of Delaware Water Gap and it's certainly relevant to a conditional use hearing."

80.     Just as Anders, Buzzard and Shoemaker intended, at the January 20, 2021 hearing, Board Supervisors Lovenheim and Barrett were directly influenced and prejudiced by their irrelevant attacks against the hotel's current operations and considered, among other things, imposing numerous onerous conditions on the conditional use permit.

7099062v4

81.     Again, Schlim was compelled to explain at the January 27, 2021 hearing that if Water Gap Wellness received the conditional use permit, the residential treatment program would operate differently because: (a) there would be no daily transportation of guests for outpatient treatment off site; (b) the residential program would provide more intensive treatment, leaving the clients with less free time and (c) the program would be required under the Pennsylvania license to implement 24-hour security and surveillance to ensure client safety.

82.     In response, Anders asked Schlim if he ever stayed at a Best Western or Holiday Inn where he was searched before he went to his room.

83.     On January 27, 2021, after hearing the objectors' ongoing exclusionary and discriminatory statements targeted against persons receiving treatment for substance abuse, Defendant Lovenheim agreed with their statements, even going so far as to state:

> I have been to the Hampton Inn, I have been to the Fairfield Inn, and both of them offered me free breakfast, but no one offered me a cup of medication with breakfast and my feeling is – let's cut to what this really is.  This is not an inn.  It never was.  I'm dismayed by that, but under our definition in our zoning laws of what inn is it's not an inn.  It's doing far more than providing lodging and meals ….

84.     Upon hearing Defendant Lovenheim's diatribe against the inn, Defendants Buzzard and Shoemaker, through their counsel, demanded that the Township Board of Supervisors take an immediate vote, without considering any conditions to impose on the application, to deny the conditional use application.

85.     The Township Solicitor balked at Defendants' request, noting that such a vote "doesn't give me enough information to be able to write a legitimate – not legitimate, but to write a well-informed decision with respect to this matter."

86.     Defendants Buzzard and Shoemaker submitted a list of thirty conditions they wanted the Township to impose if the conditional use application were granted.

87.     Other objectors, through counsel, told the Board that the conditional use application should be denied because people staying at the hotel were "being treated just for mental health problems."

88.     Although the Board finally closed the record at the January 27, 2021 hearing, the Board subsequently agreed to open it at a February 9, 2021 meeting, at the insistence of Defendants Buzzard and Shoemaker, to open the record to allow: (a) emails sent by residents after the record was closed, objecting to the conditional use application and (b) further testimony from other objectors.  Defendants Lovenheim and Barrett moved and seconded, respectively, the motion to reopen the record to allow the emails from residents and further testimony.

89.     At the final March 2, 2021 hearing, a resident, Terrence Fagan, testified about living in close proximity to persons with substance abuse issues and he requested that these types of facilities be located elsewhere.

90.     At the March 2, 2021 hearing, Board Chair Jacob Pride requested that the Board take a week to consider the conditional use application, but Barrett and Lovenheim overrode him, insisting that a vote be taken right then and there to deny the conditional use application.

91.     Defendants Barrett and Lovenheim voted to deny the conditional use application to provide inpatient residential treatment to persons suffering from substance abuse at the Property based on the objectors' discriminatory statements.

92.     Board Chair Pride dissented from Barrett's and Lovenheim's vote, pointing out: (a) his concern that discriminatory remarks were made at the hearings about persons who are afflicted by the disease of addiction or any other mental illness and (b) that the objectors did not meet their burden to support denial of the conditional use application.

19

93.     On April 13, 2021, the Township Board of Supervisors issued a written decision, purporting to provide a basis for the denial of the conditional use application, including incorrectly stating that the application was properly denied for failure to submit a site plan when in fact a plan had been submitted and no new construction was proposed to open the treatment center. A copy of the April 13, 2021 Decision is attached as **Exhibit G**.

94.     In the written decision, the Board of Supervisors contradicted itself by deriding Water Gap Wellness for operating an alleged "hybrid" treatment facility at the Property on the one hand and then deriding it on the other for failing to take all the measures that would be required if in fact it was operating a licensed residential inpatient treatment facility. *See* Decision p. 17. The Township Board of Supervisors essentially denied the conditional use application on grounds that Water Gap Wellness should have fully operated the inpatient residential treatment facility, albeit without first obtaining the conditional use permit. The Township thus placed Water Gap Wellness in a classic Catch 22 dilemma.

95.     In the written decision, the Board of Supervisors also claimed that the objectors had met their high burden of proving that the conditional use permit would have a detrimental effect on public health, safety or welfare without, however, ever specifying in the decision how the objectors had satisfied that high burden, particularly when the objectors flagrantly made exclusionary and discriminatory remarks targeted against persons who seek treatment for substance abuse and did not produce any competent evidence, including expert testimony, to establish that the proposed use was detrimental to the public health, safety or welfare.

96.     The Board's rationale was pretextual and designed to hide Defendants' discriminatory intent against individuals who seek treatment for substance abuse.

97.     On May 10, 2021, Water Gap Wellness appealed the April 13, 2021 Board decision rejecting the conditional use application.

98.     The Monroe County Court of Common Pleas agreed with Water Gap Wellness that: (a) it had filed a site plan and therefore the Board's finding that it had not filed a site plan was not a valid basis for denying the application and (b) Water Gap Wellness had proved, through its traffic engineer, that the number of vehicle trips per day for the rehabilitation center were significantly lower than trips for other authorized uses and therefore Water Gap Wellness had met its burden of complying with the curative amendment regarding traffic.  A copy of the October 15, 2021 Opinion and Order is attached as **Exhibit H**.  Therefore, the Board's alleged site-specific objections to the conditional use application were correctly reversed.

99.     However, the Court of Common Pleas affirmed denial of the application by improperly reviewing *de novo* the purported evidence before the Board, including hearsay statements and unreliable testimony from former disgruntled employees, notwithstanding that the Court had not held a hearing to take additional evidence.

100.    Furthermore, in affirming the denial, the Court abused its discretion and erred as a matter of law by: (a) disregarding that the inn was not operated in violation of the Zoning Ordinance and indeed, the Township never brought any enforcement action against the inn; (b) incorrectly stating that the applicant had received a citation from the Pennsylvania Department of Drug and Alcohol Programs when the applicant had not received any such citation;[1] (c) using the hotel's underlined unregulated housing of persons who receive outpatient treatment offsite to deny the

---

[1] To the contrary, the Department of Drug and Alcohol Programs sent an October 8, 2020 letter to PA Nice Homes LLC, the licensed provider of outpatient treatment, advising that PA Nice Homes LLC is not licensed to provide any substance abuse treatment and counselling sessions at the inn.  The Department took no further action nor was further action warranted.  The Trial Court disregarded that PA Nice Homes, LLC is a legal entity separate and distinct from the applicant.

proposed <u>regulated</u> inpatient residential treatment, notwithstanding that each is a separate and distinct use; (d) improperly relying on an inapposite decision, *Visionquest Natl Ltd. v. Board of Sup'rs of Honey Brook Twp.,* 569 A.2d 915, 917 (Pa. 1990), which, unlike the inn's legal use, involved identical prohibited uses occurring both before and after the permit application was denied and (e) emphasizing alleged incidents that residents claimed involved persons with drug addiction, none of which posed danger to the residents, and which contradicted the Trial Court's prior finding that the "facility will be gated and will provide manned security." *See* April 30, 2021 Trial Court Decision p. 9 (Exhibit E).

101.    Indeed, by denying the conditional use permit because the inn houses persons who receive outpatient treatment for substance abuse, the Trial Court contradicted its earlier April 30, 2021 Decision, in which it correctly found, based on its proper *de novo* review of the evidence in that appeal, that the Residents had not established that such evidence was relevant to the enactment of the requested curative amendment.  4/30/21 Decision p. 23 (Exhibit E).  The Trial Court further held in that Decision that once the curative amendment was enacted, the treatment facility will be a conditional use "so residents may be heard <u>on requests for conditions to be imposed on the use</u>." *Id.* p. 22 (underline added).  Notably, the Trial Court did not state that the evidence that the objectors presented to try to defeat the curative amendment, which was largely the same evidence presented to defeat the conditional use permit, would be sufficient to deny the conditional use permit.

102.    Moreover, the Trial Court's decision contravened the Commonwealth Court decision, *Heck*, 397 A.2d at 576.  In *Heck,* the township denied a permit on the basis that the applicant might contravene the zoning ordinance in future.  The Commonwealth Court rejected that as grounds for denying a permit and pointed out that if indeed a future violation occurred, the

7099062v4

township had the remedy of bringing an enforcement action.  The Trial Court failed to adhere to the *Heck* decision by relying on alleged activities occurring at the hotel, as perceived by biased objectors, to predict that illegal activity was occurring at the Property and would continue to occur once the conditional permit was issued.

103.    The Trial Court therefore fell into the same trap as the Township by accepting alleged "evidence" offered by prejudiced objectors, notwithstanding that: (a) it was based upon hearsay and unreliable testimony from former disgruntled employees that (b) was not relevant to the issue of whether the proposed use was detrimental to the public health, welfare and safety. Water Gap Wellness therefore appealed the clearly erroneous Trial Court decision.

104.    The Trial Court was neither asked to decide nor decided whether the actions that Defendants took as alleged in this action violated the constitutional and statutory rights of Plaintiffs and the persons afflicted with substance addition whom Plaintiffs seek to provide treatment.

105.    Defendants' concerted actions to prevent, obstruct and/or delay Water Gap Wellness from being able to provide much needed residential inpatient treatment to prospective residents who are impaired by alcohol and/or drug addiction, were and remain intentionally exclusionary, discriminatory, prejudicial and wrongful.

106.    Plaintiffs have suffered substantial damages as a result of the Defendants' exclusionary and discriminatory actions against Plaintiffs and their prospective residents, including causing Plaintiffs to lose approximately $8,000,000 in annual profits.

107.    Defendants conspired with each other and others to prevent, obstruct and/or delay Water Gap Wellness from being able to provide inpatient residential treatment to its disabled prospective residents at the Property.

<u>COUNT I</u>
**Fourteenth Amendment Violations of Substantive Due Process and Equal Protection**
**(Plaintiffs v. all Defendants)**

108.     Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

109.     This claim is brought in accordance with 42 U.S.C. §1983.

110.     Defendants acted with concerted discriminatory intent to prevent, obstruct and/or delay Water Gap Wellness from providing inpatient residential treatment to persons disabled as a result of addiction to alcohol and/or drugs.

111.     Defendants' interference with and/or refusal to grant Water Gap Wellness a permit to establish and operate a drug and/or alcohol treatment facility is arbitrary, based upon irrational prejudices against, and perceptions of, persons with drug and/or alcohol addictive and mental health disorders and is not rationally related to any legitimate government interest.

112.     The reasons for the denial of the permit put forth by the Township itself were not rationally related to a legitimate governmental interest.

113.     Defendants' actions therefore violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and have harmed and continue to harm Plaintiffs and the disabled individuals that they seek to treat.

114.     Because of Defendants' discriminatory reactions and behaviors, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service to disabled persons.

115.     Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $8,000,000 per year.

7099062v4

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount in excess of $8,000,000, together with punitive damages, legal fees and costs and such other and further relief as the court deems just and proper.

**COUNT II**
**Claims under the Fair Housing Amendments Act ("FHHA")**
**(Plaintiffs v. all Defendants)**

116.    Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

117.    The FHAA was amended in 1988 to extend its protections to "individuals with handicaps."

118.    Specifically, the FHAA makes it unlawful "to discriminate in the sale or rental or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap." 42 U.S.C. §3604(f).

119.    Drug and alcohol addiction qualify as a handicap protected under the FHAA.  *See* 24 C.F.R. §100.201.

120.    A proposed drug and alcohol treatment facility is a dwelling under the FHAA. *Lakeside Resort Enterprises v. Board of Sup'rs of Palmyra Twp.,* 455 F.3d 154, (3d Cir. 2006).

121.    Like the provider in *Lakeside Resort,* prospective residents of the proposed inpatient residential treatment center are expected to eat meals together, return to their rooms in the evening, receive mail there, and treat the center like a home for the duration of their stays.

122.    In denying approval to Plaintiffs to operate a residential inpatient center for the treatment of persons afflicted with alcohol and/or drug addition, Defendants conspired to act with a discriminatory purpose to prevent persons with disabilities from obtaining suitable treatment and housing in the Township.

7099062v4

123. Providing inpatient residential treatment to persons disabled by alcohol and/or drug addiction at the Property would affirmatively enhance the disabled persons' life by ameliorating the effects of the disability.

124. The Township Defendants intentionally failed to and refused to make reasonable accommodations in the Township's rules, policies, practices and services when such accommodations are necessary to afford persons with disabilities equal opportunities to use and enjoy dwellings, in violation of the FHAA. *See* 42 U.S.C. §3604(f)(3)(B).

125. Because of Defendants' concerted discriminatory reactions and behaviors, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

126. Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $8,000,000 per year.

127. Because of Defendants' concerted discriminatory reactions and behaviors, Water Gap Wellness' current and prospective patients, persons who are diagnosed with and disabled by substance abuse disorder, are prevented from receiving much needed treatment services at the Property.

**WHEREFORE**, Plaintiffs demand judgment against the Township Defendants in an amount in excess of $8,000,000, together with punitive damages, legal fees and costs and such other and further relief as the court deems just and proper.

<u>**COUNT III**</u>
**Claims under the Americans with Disabilities Act ("ADA")**
**(Plaintiffs v. Township & Borough Defendants)**

128. Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

7099062v4

129.    Water Gap Wellness' current and prospective patients are qualified individuals with disabilities within the meaning of 42 U.S.C. §12101.

130.    Defendants, the Township and the Borough, are each a qualifying public entity within the meaning of the ADA.  42 U.S.C. §12131(1)(A) (1999).

131.    Section 12132 of the Act prohibits discrimination on the basis of disability by public entities:

> subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12101(b)(1).

132.    Zoning is an activity covered under Title II of the ADA.  In the preamble to the regulations implementing 42 U.S.C. §12132, the Department of Justice observes that "title II applies to anything a public entity does," 28 C.F.R. pt. 35, app. A at 438 (1998), and in the Technical Assistance Manual compiled to interpret the Act, expressly uses zoning as an example of a public entity's obligation to avoid discrimination.

133.    Defendants' concerted actions violate Title II of the ADA and such actions harmed and continue to harm Plaintiffs and the persons with disabilities Water Gap Wellness seeks to serve.

134.    Defendants intentionally failed to make reasonable accommodations in the Township's rules, policies, practices and services when such accommodations are necessary to afford persons with disabilities equal opportunities to obtain treatment.

27

135.    Because of Defendants' discriminatory reactions and behaviors, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

136.    Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $8,000,000 per year.

137.    Because of Defendants' discriminatory reactions and behaviors, Water Gap Wellness' current and prospective patients, persons who are diagnosed with and disabled by substance abuse disorder are prevented from receiving much needed treatment services at the Property.

**WHEREFORE**, Plaintiffs demand judgment against the Township and Borough in an amount in excess of $8,000,000, together with punitive damages, legal fees and costs and such other and further relief as the court deems just and proper.

<u>**COUNT IV**</u>
**Claims under the Rehabilitation Act**
**(Plaintiffs v. the Township and Borough Defendants)**

138.    Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

139.    Congress intended that individuals seeking to overcome their addiction would be protected by the Rehabilitation Act when seeking access to services, benefits, and employment provided by a federally funded program.

140.    The Rehabilitation Act specifically recognizes as handicapped those individuals with drug-addiction who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]." 29 U.S.C. §706(8)(C)(ii)(II).

141.    Section 504 of the Rehabilitation Act prohibits discrimination against persons with disabilities by any entity that received federal financial assistance:

28

> no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ….

29 U.S.C. §794(a).

142.   Upon information and belief, the Township and Borough apply for and receive federal financial assistance.

143.   Because the Rehabilitation Act broadly defines "program or activity" to include "all of the operations of" a local government receiving federal financial assistance, 29 U.S.C. §794(b)(1)(A) (1999), zoning, a normal function of a governmental entity, is a covered activity within the meaning of the Act.

144.   Defendants' concerted actions violate Section 504 of the Rehabilitation Act and such actions harmed and continue to harm Plaintiffs and the persons with disabilities Water Gap Wellness seeks to serve.

145.   Defendants intentionally failed to make reasonable accommodations in the Township's rules, policies, practices and services when such accommodations are necessary to afford persons with disabilities equal opportunities to obtain treatment.

146.   Because of Defendants' concerted discriminatory reactions and behaviors, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

147.   Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $8,000,000 per year.

148.   Because of Defendants' concerted discriminatory reactions and behaviors, Water Gap Wellness' current and prospective patients, persons who are diagnosed with and disabled by

7099062v4

substance abuse disorder are prevented from receiving much needed treatment services at the Property.

**WHEREFORE**, Plaintiffs demand judgment against the Township and Borough in an amount in excess of $8,000,000, together with punitive damages, legal fees and costs and such other and further relief as the court deems just and proper.

### COUNT V
### Conspiracy to Deprive Plaintiffs of Civil Rights Pursuant to 42 U.S.C. §1985(3)
### (Plaintiffs v. All Defendants)

149.    Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

150.    Defendants intentionally and willfully entered into a conspiracy to deprive Plaintiffs of their beneficial use of the Property and ability to provide much needed treatment to persons afflicted with alcohol and/or drug addiction.

151.    This conspiracy included Defendants' agreement to ensure that Plaintiffs would receive no permits from the Township, nor relief from the Board of Supervisors to utilize the Property for an otherwise lawful drug and/or alcohol abuse treatment facility, and discriminatory enforcement of laws and ordinances specifically aimed at Plaintiffs' proposed use of the Property.

152.    By reason of the foregoing, Plaintiffs have been damaged in an amount in excess of $8,000,000 and are entitled to punitive damages for the outrageous concerted actions of the Defendants.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount in excess of $8,000,000, together with punitive damages, legal fees and costs and such other and further relief as the court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

PAMELA M. TOBIN, ESQUIRE
Attorneys for Plaintiffs
Water Gap Acquisition Partners, LLC and
Water Gap Capital Partners, LLC

Dated:  November 24, 2021

7099062v4

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WATER GAP ACQUISITION PARTNERS, : | |
| LLC : | |
| 288 Mountain Road : | |
| Delaware Water Gap, PA 18327 : | CIVIL ACTION |
| and : | JURY DEMAND |
| WATER GAP CAPITAL PARTNERS, LLC : | |
| 288 Mountain Road : | |
| Delaware Water Gap, PA 18327, : | |
| Plaintiffs : | |
| v. : | No. _____ |
| SMITHFIELD TOWNSHIP : | |
| 1155 Red Fox Road : | |
| East Stroudsburg PA 18301 : | |
| and : | |
| SMITHFIELD TOWNSHIP BOARD OF : | |
| SUPERVISORS : | |
| 1155 Red Fox Road : | |
| East Stroudsburg PA 18301 : | |
| and : | |
| ROBERT LOVENHEIM : | |
| 1155 Red Fox Road : | |
| East Stroudsburg PA 18301 : | |
| and : | |
| BRIAN E. BARRETT : | |
| 1155 Red Fox Road : | |
| East Stroudsburg PA 18301 : | |
| and : | |
| BOROUGH OF DELAWARE WATER GAP : | |
| 49 Main Street : | |
| Delaware Water Gap PA 18327 : | |
| and : | |
| JOHN W. SHOEMAKER : | |
| 49 Main Street : | |
| Delaware Water Gap PA 18327 : | |
| and : | |
| WILLIAM BUZZARD : | |
| 49 Main Street : | |
| Delaware Water Gap PA 18327, : | |
| Defendants : | |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

PAMELA M. TOBIN, ESQUIRE
Attorneys for Plaintiffs
Water Gap Acquisition Partners, LLC and
Water Gap Capital Partners, LLC

Dated:  November 24, 2021

2

7099062v4